**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **RegaloRx, Inc.,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**Alpha Scrip Incorporated, and Regalo Health LLC,**<br><br>**Defendants.** | § § § § § § § § § § § | **Case No. 2:26-cv-02581-JWL-GEB**<br><br>**Removed from Johnson County District Court Case No. JO-2026-CV-002169** |
| **Alpha Scrip Incorporated,**<br><br>**Counterclaimant,**<br><br>**v.**<br><br>**RegaloRx, Inc., and James P. Mitchum**<br><br>**Counterclaim Defendants.** | § § § § § § § § § § § | |

**DEFENDANTS' PARTIAL MOTION FOR JUDGMENT ON THE PLEADINGS**

Defendants Alpha Scrip Incorporated ("Alpha Scrip") and Regalo Health LLC ("Regalo Health," and collectively with Alpha Scrip, "Defendants") respectfully move pursuant to Fed. R. Civ. P. 12(c) for judgment on the pleadings on Counts I, IV, V, and VII of Plaintiff RegaloRx, Inc.'s ("Plaintiff" or "RegaloRx") Amended Petition, ECF No. 1-1, and Alpha Scrip moves for judgment on the pleadings as to Counts III and VI.

## I. INTRODUCTION

At its core, this is a breach-of-contract dispute between Plaintiff RegaloRx, Inc. and Defendant Regalo Health LLC. Plaintiff alleges earn-out payments are past due under an Asset

Purchase Agreement (the "Agreement"), and based on the same contractual rights, claims quantum meruit.

*First*, judgment should be entered on the quantum meruit claims in Defendants' favor because Kansas law does not permit a party to assert quasi-contract claims addressing the same subject matter as an express agreement.

*Second*, Plaintiff cannot sue *Defendant Alpha Scrip* on the Agreement because, according to Plaintiff's own pleadings, Alpha Scrip exercised its contractual right to assign its obligations to Regalo Health. Plaintiff's claim under the Agreement lies, if anywhere, against Regalo Health.

*Third,* worried that Regalo Health cannot meet these obligations, Plaintiff claims the assignment was a fraudulent transfer under the Kansas Uniform Fraudulent Transfer Act ("UFTA"). This turns the statute on its head. The statute exclusively redresses a *debtor's* rendering itself unable to pay by *transferring assets* that would otherwise be used to satisfy a judgment. It does not apply to a situation where a *transferee* is allegedly unable to meet an *obligation* it was assigned. The claim fails for this reason. Additionally, even if the statute could apply to this situation (which it does not), Plaintiff fails to plead fraud with particularity as required by Federal Rule of Civil Procedure 9(b).

## II. <u>BACKGROUND</u>

### A. Plaintiff's Allegations

Plaintiff alleges that RegaloRx operated a business that facilitated the provision of prescription medications to qualifying patients through patient-assistance programs sponsored by pharmaceutical manufacturers. Amended Petition ¶ 9. On September 27, 2023, RegaloRx and Alpha Scrip entered into the "Agreement." *Id.* ¶¶ 4, 14. Amended Petition, Ex. 1, ECF No. 10. Under the Agreement, RegaloRx agreed to sell, and Alpha Scrip agreed to purchase, substantially all of the assets used in the business, with Alpha Scrip also assuming certain liabilities. Amended

Petition ¶¶ 4, 15. The consideration specified in the Agreement included $6 million in cash, a post-closing working-capital adjustment, and certain earn-out payments. *Id.* ¶ 17.

According to Plaintiff, the earliest due date for an earn-out payment under the Agreement was June 30, 2025. *Id.* ¶¶ 21, 25. Additional earn-out payments are allegedly due at the end of March every year from 2026 through 2031. *Id.* ¶ 21. On August 19, 2025, Plaintiff allegedly made a demand to Alpha Scrip for payment of the earn-out payment due on June 30, 2025. *Id.* ¶ 31 & Ex. 3.

Section 10.10 of the Agreement provides, in relevant part, that "[Alpha Scrip] may assign its rights and obligations under this Agreement to any Affiliate of [Alpha Scrip] upon notice to [RegaloRx]." Amended Petition, Ex. 1, Agreement § 10.10. On November 21, 2025, Alpha Scrip provided notice to RegaloRx that Alpha Scrip had "assigned its rights and obligations under the Asset Purchase Agreement . . . to its affiliate Regalo Health, LLC." Amended Petition, Ex. 4 (the "Assignment"), ECF No. 1-3 at Page 33.

Despite the assignment to Regalo Health of all "obligations" of Alpha Scrip under the Agreement, including the Business acquired by Alpha Scrip, *id.*, Plaintiff alleges "[o]n information and belief" that Regalo Health "has no or insufficient assets." Amended Petition ¶ 90; *see also id.* ¶ 97 ("on information and belief, Regalo Health lacks sufficient resources and assets to perform the obligations under the Agreement"). There are no allegations, even upon information and belief, that ***Alpha Scrip*** was unable to pay claims against itself as a result of the Assignment. *See generally* Amended Petition. Nor are there any allegations about the value that Alpha Scrip received for the Assignment. *See generally id.*

### B. Procedural History

RegaloRx filed its original petition on August 13, 2026, in the District Court of Johnson County, Kansas, Case No. JO-2026-CV-002169. *See* ECF No. 1-3. On September 4, 2026,

RegaloRx filed the Amended Petition. *See* ECF No. 1-1. The Amended Petition contains seven counts: (I) breach of contract against Alpha Scrip; (II) breach of contract against Regalo Health LLC; (III) accounting against Alpha Scrip and Regalo Health; (IV) quantum meruit against Alpha Scrip; (V) quantum meruit against Regalo Health; (VI) declaratory judgment against Alpha Scrip and Regalo Health; and (VII) relief from fraudulent transfer against Alpha Scrip. *See* Amended Petition at 8–15.

Defendants accepted service of the Amended Petition on September 17, 2026. *See* ECF No. 1 ¶ 3. Defendants then timely removed to this Court on September 25, 2026. *See* ECF No. 1. Defendants answered the amended petition and Alpha Scrip counterclaimed on September 25, 2026, and amended the answer and counterclaim on October 13, 2026. *See* ECF Nos. 8 and 20. Plaintiff and Counterclaim Defendant James Mitchum answered the counterclaim on November 9, 2026. *See* ECF No. 22.

## III. <u>LEGAL STANDARD</u>

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The Court reviews a Rule 12(c) motion [for judgment on the pleadings] under the same standard that governs a Rule 12(b)(6) motion [to dismiss]." *Equal Emp. Opportunity Comm'n v. UPS Ground Freight, Inc.*, 319 F.Supp.3d 1237, 1239 (D. Kan. 2018) (granting motion for judgment on the pleadings); *see also, e.g.*, *C&M Res., LLC v. Extraction Oil & Gas, Inc.*, 159 F.4th 755, 766 (10th Cir. 2025) (affirming grant of judgment on the pleadings).

To survive a motion to dismiss, the complaint must contain factual allegations that "raise a right to relief above the speculative level" and show "more than 'a sheer possibility'" that defendant acted unlawfully. *EEOC v. UPS*, 319 F.Supp.3d at 1239 (quoting *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009)). "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim." *Id.* (quoting *Kan. Penn. Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011)). The Court may consider documents referred to in the pleading without converting the Rule 12 motion to a Rule 56 motion for summary judgment. *See id.* (citing *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384–85 (10th Cir. 1997)).

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see also Kansas Penn Gaming, LLC v. HV Props. of Kansas LLC*, No. 11-4155-RDR, 2012 WL 2359417, at *3 (D. Kan. June 20, 2012) (holding Rule 9(b) applies to Kansas fraudulent transfer claims). "More specifically," the Tenth Circuit requires allegations of fraud to "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000). Allegations may be based "upon information and belief" only where the complaint "sets forth the factual basis for the plaintiff's belief." *U.S. ex rel. Smith v. The Boeing Co.*, No. 05-cv-01073-WEB, 2006 WL 542851, at *5 (D. Kan. Feb. 27, 2006) (quoting *Koch v. Koch Indus.*, 203 F.3d at 1237).

## IV. <u>ARGUMENT</u>

### A. Plaintiff's Quantum Meruit Claims Fail Because There Is a Contract Addressing the Same Subject (Counts IV and V)

Plaintiff asserts claims under quantum meruit that fail because they relate to the same subject matter of the parties' agreement. Under Kansas law, "[r]ecovery for payment under the terms of a contract and recovery for quantum meruit are mutually exclusive legal concepts." *Midwest Asphalt Coating, Inc. v. Chelsea Plaza Homes, Inc.*, 243 P.3d 1106, 1110 (Kan. App. 2010). "Accordingly, quantum meruit is not available ***when an express contract addresses the***

***obligations of the parties***." *Wolfert Landscaping Co. v. LRM Indus., Inc.*, 287 P.3d 300 (Kan. App. 2012) (emphasis supplied) (collecting cases); *see also, e.g.*, *Fusion, Inc. v. Nebraska Aluminum Castings, Inc.*, 934 F.Supp. 1270, 1275 (D. Kan. 1996) (granting motion to dismiss).

Here, an express contract addresses the obligations of RegaloRx, Alpha Scrip, and Regalo Health: the Agreement. The claims for quantum meruit are based on Alpha Scrip and Regalo Health's alleged "failure to make Earn-Out Payments." Amended Petition ¶ 63; *see also id.* ¶ 69. "Earn-Out Payments" are allegedly defined under the Agreement, *id.* ¶ 18, and the alleged failure to make the Earn-Out Payments is also the basis of the breach of contract claims, *id.* ¶¶ 43, 50. The alleged "obligation of the parties"—making Earn-Out Payments—thus is expressly addressed by a contract. Moreover, Plaintiff's own allegations in reliance on the Agreement are a sufficient basis to enter judgment on the quantum meruit claims. *See Midwest Asphalt*, 243 P.3d at 1110 (plaintiff's assertion that plaintiff "fully performed its obligations under the Contract" by itself "would preclude recovery on a quantum meruit claim").

### B. Alpha Scrip Cannot Be Liable for Breach of the Obligations it Assigned (Counts I, III, and VI)

The claims for breach of contract, accounting, and declaratory judgment against Alpha Scrip fail because Alpha Scrip assigned its obligations under the Agreement to Regalo Health. Section 10.10 of the Agreement provides that "Buyer may assign its rights ***and obligations*** under this Agreement to any Affiliate of Buyer upon notice to Seller." Amended Petition Ex. 1, Agreement § 10.10 (emphasis supplied). Plaintiff agrees and alleges that Alpha Scrip (Buyer) provided notice to RegaloRx (Seller) and that Alpha Scrip assigned "its rights and obligations." *See* Amended Petition ¶ 37 & Ex. 4.

Under Kansas law, an assumption of a duty by an assignee "will discharge any duty or liability of the original obligor" if "the obligee agrees[.]" *Sec. Ben. Life Ins. Co. v. F.D.I.C.*, 804

F.Supp. 217, 225 (D. Kan. 1992) (citing Restatement (Second) of Contracts § 318). The agreement to discharge the liability of the assignor can be in the initial contract. The Second Restatement provides an illustrative example:

> A borrows $50,000 from B and contracts to repay it. The contract provides that, if a corporation C is organized and assumes the debt under described conditions, A will be under no further obligation. C is organized and in good faith assumes the debt as provided. A is discharged.

Restatement (Second) of Contracts § 318, illus. 9.

Here, Plaintiff expressly agreed that Alpha Scrip could assign its "obligations" to any "Affiliate of Buyer upon notice to Seller." Amended Petition Ex. 1, Agreement § 10.10. Alpha Scrip complied with Section 10.10 of the Agreement in assigning its rights and obligations to Regalo Health, which is an "Affiliate of Buyer." *See* Amended Petition ¶ 37 & Ex. 4. Looking to the "language and general intent" of the Agreement, *Bldg. Erection Servs. Co., L.C. v. Am. Bldgs. Co.*, No. 09-2104-CM, 2010 WL 2667201, at *4 (D. Kan. June 29, 2010), Plaintiff agreed that Alpha Scrip would have no obligations upon assignment following notice to Plaintiff.

*Tear Drop Cattle Co. LLC v. Devon Energy Prod. Co. LP* underscores the importance of contract language in determining whether a party assigned its obligations. No. 24-8001, 2025 WL 1923881, at *6 (10th Cir. July 14, 2025) ("[I]f the parties wanted both rights and obligations to be transferrable, we presume they would have included language to that effect in their agreement. We can only enforce the intent reflected in the language of the agreement." (cleaned up)) (applying Wyoming law). The court cited several factors for evaluating whether contractual language relieves liability upon assignment, including whether "the parties' rights and obligations were time-limited, indicating they were contracts, because servitudes are often perpetual"; "language indicating the operator's obligations would end upon assignment, which also suggested they were nondelegable contracts[]"; whether the agreement resembles a lease, which continues to bind the

original lessor after assignment; and the structuring of the obligation to pay. *Id.* at *5 (finding "these factors demonstrated that the parties created [nondelegable] contractual obligations, not servitudes, and did not intend to relieve the operator of liability upon assignment"). In contrast, Alpha Scrip's assignment has no time limits, relieves liability upon assignment, and is not a lease. *See* Amended Petition, Ex. 1, Agreement § 10.10; *id.* Ex. 4.

Therefore, according to the plain language of the parties' agreement, Alpha Scrip's "obligations" were assigned to Regalo Health and it was thereby relieved of liability. Any claims against Alpha Scrip predicated on the assigned contract fail and judgment on the pleadings should be entered in favor of Alpha Scrip.

### C. Plaintiff's Fraudulent Transfer Claim Based on the Agreement's Assignment Also Fails (Count VII)

Plaintiff's K.S.A. 33-204(a) claim for fraudulent transfer against Alpha Scrip fails because: (1) Plaintiff does not and cannot allege that the assignment impaired Alpha Scrip's own ability to pay creditors by transferring an asset; and (2) Plaintiff has failed to satisfy the heightened pleading standard for alleged fraud.

#### 1. Plaintiff does not and cannot allege that the assignment impaired Alpha Scrip's *own* ability to pay creditors by transferring an asset.

Plaintiff's fraudulent transfer theory is backwards. Rather than allege that Alpha Scrip (the debtor) transferred assets that rendered itself insolvent or unable to pay, it alleges that Regalo Health (*the transferee*) received an obligation *it* is unable to pay. This is an unprecedented and unsupportable application of the fraudulent transfer statute. The plain text of the statute—and every interpreter of the UFTA in any of the several states adopting it—provides that the statute may only be used when the defendant transfers assets that render himself unable to pay his debts. It does not apply when he transfers the *debt itself* to another party that cannot pay.

The text of the statute begins: "a transfer made or obligation incurred by a debtor is fraudulent as to a creditor if . . ." K.S.A. 33-204(a). "Transfer" is specifically defined as "parting with an *asset.*" *See* K.S.A. 33-201(*l*). Here, Alpha Scrip did not transfer an *asset* but a *debt* (i.e., obligation). *See* K.S.A. 33-201(b), (e) (defining asset and debt separately). Plaintiff alleges only that Alpha Scrip "attempted to dispose and part with its *obligations* under the Agreement." Amended Petition ¶ 90. *Incurring* an obligation may be a fraudulent transfer but *disposing* of an obligation never is. *See* K.S.A. 33-204(a) ("a transfer made or *obligation incurred*" (emphasis added)); *In re Bal Harbour Quarzo, LLC*, 623 B.R. 903, 915–16 (Bankr. S.D. Fla. 2020) (holding that no "transfer" occurred under Florida UFTA and bankruptcy code where third party assumed debt owed by debtor to creditor because "[debtor] was relieved of this liability"). Indeed, disposing of an obligation only *improves* a debtor's balance sheet.

Moreover, the assigned contract cannot be an "asset" (and Plaintiff does not allege it is) because its burdens outweigh its benefits. *See* Amended Petition ¶ 90 (alleging that assignee Regalo Health "has no or insufficient assets" despite being assigned the Agreement). A transferred property is not an "asset" when it is less valuable than the associated obligations. *See, e.g.*, *Wells Fargo Vendor Fin. Servs., LLC v. Nationwide Learning, LLC*, 429 P.3d 221, 239 (Kan. App. 2018) (property was not an "asset" that was transferred because it was exceeded by value of note on property) (collecting cases); *Dollar Tree Stores Inc. v. Toyama Partners LLC*, 875 F.Supp.2d 1058, 1080 (N.D. Cal. 2012) (transferred contract was not asset under California UFTA because "[plaintiff] claims that it is owed significant damages for breach of the [contract]" and thus contract "had no positive value"); *In re Gomez*, 560 B.R. 866, 873 (Bankr. S.D. Fla. 2016) ("Transfer of a

valueless asset cannot hinder, delay or defraud any creditor of value as it is valueless.") (applying Florida UFTA and bankruptcy code).[1]

Here, the assigned contract is the source of Alpha Scrip's alleged obligation but not of its *ability to pay* (or else Regalo Health as transferee would have the same ability to pay). But the UFTA is designed only to remedy a transferor's disabling its *own* ability to pay by transferring "beyond reach" assets that could satisfy a judgment. *See, e.g.*, *In re Rountree*, 448 B.R. 389, 405 (Bankr. E.D. Va. 2011) (collecting cases holding UFTA "is a creditor-protection statute that prevents debtors from placing assets beyond the reach of otherwise unsecured creditors."). This is why the "badges of fraud" used to identify a fraudulent transfer focus on the *transferor's* ability to pay its own debts following the transfer, not the *transferee's* ability to pay its debts. *See* K.S.A. 33-204(b) (6)–(9) (examining whether "the ***debtor*** absconded," "the ***debtor*** removed or concealed assets," the ***debtor*** received "reasonably equivalent to the value of the asset transferred," or "the ***debtor*** was insolvent or became insolvent"). Here, Alpha Scrip did nothing to hinder its own ability to pay. Its creditworthiness is at least as good as it was before (probably better). Nor was anything put "beyond reach" of Plaintiff as is evident from the fact Plaintiff is suing Regalo Health on the same contract that was transferred.

Plaintiff is only unhappy with some terms of its bargain. It is suing to enforce a revenue-sharing provision while seeking to avoid an inextricable part of that bargain—that the obligor could change, and did change, to the operating entity Regalo Health. This was a foreseeable result of written terms the parties negotiated. It is not fraudulent for Alpha Scrip to exercise a contractual

[1] Indeed, the remedies available to a creditor under the UFTA for a voidable fraudulent transfer—the lesser of the "value of the asset transferred" or the amount to satisfy creditor's claim—would be non-sensical if the asset could be a negative value. *See* K.S.A. 33-208(b); *see also Dollar Tree*, 875 F.Supp.2d at 1080 ("[Plaintiff] has not submitted any evidence showing that . . . the [contract] could be sold to generate a net recovery of money which could then be used to satisfy [plaintiff's] claim.").

right. And UFTA does not address it. The claim fails as a matter of law and judgment on the pleadings should be entered for Defendants.

**2. Plaintiff has not met, and cannot meet, the heightened pleading standards to show an intent to hinder or delay.**

Besides being legally defective, Plaintiff's fraudulent transfer claim is factually inadequate to meet Rule 9(b)'s heightened pleading requirement. The only badges of fraud Plaintiff alleges with particularity are that Alpha Scrip and Regalo Health are related, and that Plaintiff had threatened Alpha Scrip with litigation prior to the assignment. *See* Amended Petition ¶ 88; K.S.A. 33-204(b)(1), (4). Merely alleging one or two badges of fraud, such as that companies are related, is insufficient to meet Rule 9(b)'s heightened pleading standard and state a claim under the UFTA. *See, e.g.*, *In re Gluth Bros. Const., Inc.*, 424 B.R. 368, 377 (Bankr. N.D. Ill. 2009) (dismissing claim under Illinois UFTA where plaintiff only alleged one badge of fraud); *Koch Eng'g Co. v. Faulconer*, 716 P.2d 180, 185 (Kan. 1986) ("For example, the mere fact that grantor and grantee are related, standing alone, would not support a finding that the conveyance was fraudulent.").

Plaintiff's remaining allegations upon information and belief also do not support a UFTA claim with particularity. Under Rule 9(b), allegations may not be based "upon information and belief" without a "factual basis for the plaintiff's belief." *Smith*, 2006 WL 542851, at *5; *see also Koch v. Koch Indus.*, 203 F.3d at 1237. Plaintiff alleges that "RegaloRx will continue to be damaged because, on information and belief, Regalo Health lacks sufficient resources and assets to perform the obligations under the Agreement or to pay a judgment for such breach of the Agreement." Amended Petition ¶ 97; *accord id.* ¶ 90. Besides the fact that Regalo Health's resources (as opposed to Alpha Scrip's) are not relevant to any badge of fraud under

K.S.A. 33-204(b), Plaintiff's Amended Petition provides no factual basis for Plaintiff's belief that Regalo Health cannot pay a judgment for breach of the Agreement.

## V. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court enter judgment on the pleadings in their favor on Counts I, IV, V, and VII of Plaintiff's Amended Petition, and Alpha Scrip respectfully requests judgment on the pleadings in its favor as to Counts III and VI.

Dated: November 11, 2026

Respectfully submitted,

**BERKOWITZ OLIVER LLP**

*/s/ Lauren Tallent*
Lauren Tallent (KS No. 28490)
Carson M. Hinderks (KS No. 25079)
2600 Grand Blvd., Suite 1200
Kansas City, MO 64108
Phone: 816-627-0231
Email: ltallent@berkowitzoliver.com
chinderks@berkowitzoliver.com

and

Jonathan R. Mureen (TX Bar No. 24060313) (*pro hac vice*)
**SQUIRE PATTON BOGGS (US) LLP**
2021 McKinney Avenue, Suite 200
Dallas, TX 75201
(214) 758-1500 – Telephone
(214) 758-1550 – Facsimile
Email: jon.mureen@squirepb.com

and

James M. Brennan (OH Bar No. 101670)
(*pro hac vice*)
**SQUIRE PATTON BOGGS (US) LLP**
1000 Key Tower
127 Public Square
Cleveland, OH 44114
(216) 479-8041 – Telephone

(216) 479-8780 – Facsimile
Email: james.brennan@squirepb.com

*Attorneys for Alpha Scrip Incorporated and Regalo Health LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 11, 2026, a true and accurate copy of the foregoing was electronically filed with the Clerk of the United States District Court via the Court's CM/ECF system.

*/s/ Lauren Tallent*
Lauren Tallent
*Attorney for Alpha Scrip Incorporated and Regalo Health LLC*